Kent W. Plott (USB No. 5336)
Scott Lundberg (USB No. 2020)
Mark S. Middlemas (USB No. 9252)
Lundberg & Associates
3269 South Main Street, Suite 100
Salt Lake City, UT  84115
(801) 263-3400
(801) 263-6513 (fax)
LundbergECFmail@lundbergfirm.com

Attorneys for Trans Lease, Inc.
L&A Case No. 08-67486

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

| | |
|---|---|
| In re: | Bankruptcy No. 08-24034 WTT |
| Wolper Construction, Inc., | (a Chapter 11 case) |
| Debtor. | Filed Electronically |

## MOTION OF TRANS LEASE, INC. MOTION FOR ASSUMPTION OR REJECTION OF AN UNEXPIRED LEASE OR IN THE ALTERNATIVE MOTION FOR RELIEF FROM THE AUTOMATIC STAY

### (Oral Argument Requested)

Trans Lease, Inc. ("Creditor"), pursuant to Rules 4001 and 9014, Rules for Bankruptcy Procedure,  moves the Court for its order setting a date certain when the Debtor is required to assume or reject an unexpired lease, or in the alternative, for its order granting relief from the automatic stay as to the property described herein, and represents as follows:

1. On June 23, 2008, the debtor filed a petition commencing a case under Chapter 11, Title 11, United States Code.

2. On or about August 30, 2006, the debtor, as lessee, executed and delivered to Creditor, as lessor, a Closed End Motor Vehicle Lease Agreement, (the "Lease"), a copy of which is attached hereto as Exhibit "A" and by this reference made a part hereof, by which Debtor agreed to lease a 2006 Sterling SC8000 W Schwartz A7000 Street Sweeper S/N 06A70000177 VIN No. 49HAADBV86DW51040 (the "Vehicle").

<u>FIRST CLAIM FOR RELIEF</u>

3. The debtor is in default under the terms of the Lease by reason of failure to make payments as agreed as follows:

| DATE DUE | AMOUNT DUE |
|---|---|
| April 30, 2008 | $ 3,572.03 |
| May 30, 2008 | 3,572.03 |
| June 30, 2008 | 3,572.03 |
| Sales Tax | 728.69 |
| Late Charges | 357.20 |
| **TOTAL DUE** | **$11,801.98** |

4. Creditor is entitled to an order establishing a date by which Debtor must either assume or reject the Lease which date should not be later than the date of hearing on this motion.

<u>SECOND CLAIM FOR RELIEF</u>

- 2 -

5.      In the event it is determined that the Lease does not constitute an unexpired lease within the meaning of 11 U.S.C. §365, then Creditor has a security interest in the Vehicle.

6.      Creditor does not have and has not received adequate protection for its interest in the Vehicle.

7.      There is no equity in the Vehicle and it is not necessary for an effective reorganization.

8.      If Creditor is not permitted to immediately obtain possession of the Vehicle pursuant to its security interest, it will suffer irreparable injury, loss and damage.

WHEREFORE, Creditor moves this Court for its Order as follows:

1.      Establishing a date certain by which Debtor must assume or reject the unexpired Lease with Creditor, which date should not be later than the date of hearing on this motion, and determining what constitutes assumption of the Lease.

2.      In the alternative for an Order granting relief from the automatic stay provided under 11 U.S.C. §362(a) to allow Creditor to recover possession of and dispose of the Vehicle.

3.      Creditor requests approval of reasonable attorney fees and costs in the amount of $650.00 in connection with the filing and resolution of this motion for relief.  Reasonable attorney fees are allowable pursuant to the loan documents attached hereto as Exhibit "A."  Creditor is not seeking an administrative claim or payment of the fees through the plan, but intends to add the fees and costs to the obligation pursuant to the contract provisions.

- 3 -

11.    Creditor further requests, pursuant to Bankruptcy Rule 4001(a)(3), that the order terminating the automatic stay not be stayed ten (10) days and the order be enforceable upon entry.

DATED: July 16, 2008

LUNDBERG & ASSOCIATES

By _____/s/_____
Kent W. Plott
Attorneys for Creditor

Exhibit "A"



# SCHEDULE "A" VEHICLE DESCRIPTION AND TERMS

**WOLPER CONSTRUCTION,INC., Lessee**
**3750 W 500 S**
**SALT LAKE CITY UT 84104**

1-TR-10608-067
Schedule No.    1 ( One)

This Schedule is executed and delivered this August 30, 2006, under and pursuant to the terms of that certain Lease Agreement No. 1-TR-10608-067, dated August 30, 2006, by and between the undersigned Lessor and Lessee.

| Year/Make/Model | Serial Number | Base Location | Contract Date |
|---|---|---|---|
| 2006 STERLING SC8000 W/ SCHWARTZ A7000 STREET SWEEPER S/N 05A70000177. | 49HAADBV86DW51040 | 3750 W 500 S SALT LAKE CITY, UT 84104 COUNTY: SALT LAKE | 08/30/2006 |

| | | | |
|---|---|---|---|
| Capitalized Cost | 164,200.00 | Base Lease Payment | 3,572.03 |
| Security Deposit | 7,500.00 | Sales/Use Tax | 0.00 |
| Residual Value | 41,050.00 | State Tax | 169.67 |
| Term (Number of Months) | 48 | RTD/District Tax | 0.00 |
| Payment Start Date | 08/30/2006 | City Tax | 35.72 |
| Administration Fee | 295.00 | County Tax | 30.36 |
| Other | 0.00 | Total Payment | 3,807.78 |

**Ratification and Affirmation of Representations, Warranties and Covenants** - Lessee hereby agrees that its warranties and covenants made in the Lease Agreement are approved, ratified and affirmed in all aspects as of the date of this Lease Schedule and confirms that the representations made in the Lease Agreement and Statement are, as of the date of this Lease Schedule, true, accurate and complete in all aspects. Lessor and Lessee hereby characterize this Lease Schedule as a separate Lease with respect to each of the vehicles set forth herein.

Lessee also represents, warrants and certifies that the vehicle(s) were available for use and placed in service by Lessee on the above-described "Delivery Date."

Dated: August 30, 2006

Lessee: WOLPER CONSTRUCTION,INC.

By:                                          By:

Title  PRESIDENT                            Title

Lessor: TRANS LEASE, INC. DBA TRANS LEASE, INC.; TRANS LEASE, INC. OF COLORADO; GEP LEASING, INC.

By:

Title   Sr. Vice President

This Lease has been assigned to one or more secured parties and the purchase or assignment of this Lease would violate the rights of the secured parties.



# TRANS LEASE, INC.

# TERMINAL RENTAL ADJUSTMENT CLAUSE

1-TR-10608-067    Schedule No.    1(One)

| (Lessor) | | (Lessee) |
|---|---|---|
| TRANS LEASE, INC. DBA TRANS LEASE, INC.; TRANS LEASE INC. OF COLORADO; GEP LEASING, INC. PO Box 16464 Denver, CO 80216-0464 | | WOLPER CONSTRUCTION, INC. 3750 W 500 S SALT LAKE CITY, UT 84104 |

The following additional terms are a part of a Lease between Lessor and Lessee, dated August 30, 2006,

1.  In accordance with Section 7701(h) of the Internal Revenue Code of 1986, under penalty of perjury, Lessee hereby certifies that it intends that more than fifty percent (50%) of the use of the Motor Vehicle(s) is to be a trade or business of Lessee.

2.  Lessor and Lessee hereby acknowledge that solely with respect to that certain Schedule A dated August 30, 2006 and to each of the Vehicles set forth therein, the Master Lease Agreement (Lease) dated between Lessor and Lessee is modified with respect to Paragraph 17 "END OF LEASE TERMINATION LIABILITY," Subparagraph 2, as follows:

    Upon the return of the Vehicle(s) as herein provided, Lessor will sell the Vehicle(s) at a public or private sale with or without notice to Lessee. If the amount received from the sale (less sales tax payable, reasonable sales commissions and restoration costs, if any, exceeds the Residual Value of the Vehicle(s) as set forth in the Schedule(s), the amount of such surplus shall be paid to Lessee. If the amount received from the sale (less sales tax payable, reasonable sales commissions and restoration costs, if any, is less than the Residual of the Vehicle(s) as set forth in the Schedule(s), Lessee shall be liable for, and shall pay upon demand, the amount of such deficiency to Lessor, except that such deficiency shall not exceed $41,050.00. Lessee acknowledges that the potential benefit or liability contemplated by this Paragraph 2 is not intended to create any equity interest in the Vehicle(s) for Lessee but rather is designed as an incentive for Lessee to properly maintain the Vehicle(s) as required by this Lease.

3.  Any amount paid to or by Lessee pursuant to this Schedule shall be the "Terminal Rental Adjustment."

4.  Lessee has been advised that LESSEE WILL NOT BE TREATED AS THE OWNER OF THE EQUIPMENT FOR FEDERAL INCOME TAX PURPOSES.

5.  Lessee agrees to indemnify Lessor pursuant to paragraph 8 of the Lease for any claims, losses, costs, damages and expenses of whatsoever kind and nature, including legal fees, resulting from Lessee's breach of the above representation and certification.

6.  Lessee further acknowledges and agrees that all other terms and conditions of said Lease shall remain in full force and effect.

Dated: August 30, 2006

Lessee: WOLPER CONSTRUCTION, INC.

By: _____     By: RICHARD WOLPER

Title    PRESIDENT              Title    PRE

BY SIGNING BELOW, THE LESSOR ACCEPTS AND AGREES TO THE TERMS AND CONDITIONS OF THIS LEASE.

Lessor: TRANS LEASE, INC. DBA TRANS LEASE, INC.; TRANS LEASE, INC. OF COLORADO; GEP LEASING, INC.

By: _____

Title    Sr. Vice President

1



# DELIVERY AND ACCEPTANCE SCHEDULE

1-TR-10608-067          Schedule No.      1(One)

| (Lessor) | (Lessee) |
|---|---|
| TRANS LEASE, INC. DBA TRANS LEASE, INC.;<br>TRANS LEASE INC. OF COLORADO;<br>GEP LEASING, INC.<br>PO Box 16464<br>Denver, CO 80216-0464 | WOLPER CONSTRUCTION, INC.<br>3750 W 500 S<br>SALT LAKE CITY, UT 84104 |

With respect to a Lease between Lessor and Lessee, dated August 30, 2006, Lessee hereby certifies and represents to Lessor as follows:

1.      Certificate of Delivery and Acceptance and Date of Placement in Service.  Lessee hereby certifies to Lessor that on and as of the date described above as "Delivery Date," the vehicle(s) described herein: (1) are tangible personal property and (2) have been delivered to and are in the possession of the Lessee.  Lessee also represents, warrants and certifies that the vehicle(s) were available to use and placed in service by Lessee on the above-described "Delivery Date."

2.      Acceptance Acknowledgement.  Lessee acknowledges that the vehicle(s) was received in good condition and is in good operating condition and acceptable to Lessee.  Lessee approves payment by Lessor to the supplier.

Unit Description                                                  Serial Number

2006 STERLING SC8000 W/ SCHWARTZ A7000 STREET          49HAADBV86DW51040
SWEEPER S/N 06A70000177.

Date of Delivery          August 30, 2006

Point of Delivery          3750 W 500 S SALT LAKE CITY, UT 84104

Dated: August 30, 2006

Lessee:  WOLPER CONSTRUCTION, INC.

By: _____          By: _____

Title    PRESIDENT          Title _____

BY SIGNING BELOW, THE LESSOR ACCEPTS AND AGREES TO THE TERMS AND CONDITIONS OF THIS LEASE.

Lessor:  TRANS LEASE, INC. DBA TRANS LEASE, INC.; TRANS LEASE, INC. OF COLORADO; GEP LEASING, INC.

By: _____

Title    Sr. Vice President



# TRANS LEASE, INC.

# LEASE & FINANCE FACTS

### 1-TR-10608-067        Schedule No.    1(One)

**Payments:** Most first payments are due at the same time your documents are signed, followed by the second payment due within 30 days.  Your first payment is due on August 30, 2006.

**Billing Statements:** Statements are mailed out in accordance with the following schedule:

| Payment Date | Billing Date |
|---|---|
| 1st - 7th | 18th |
| 8th - 13th | 24th |
| 14th - 19th | 30th |
| 20th - 25th | 6th |
| 26th - 31st | 12th |

**Late Charges:** A 10-day grace period is given from your due date until you are charged a late fee.  A 5% fee on the total amount of your payment will be assessed if not received by the end of the grace period.  You will be billed for it on your next billing cycle.  A late charge will be assessed on your account if payment is not received by the 9th.

**Insurance:** A certificate evidencing proper coverage is required before any equipment is picked up or delivered.  If you change companies, you must have your new agent contact us to add the correct lienholder, additional insured and loss payee information.  For exact limits, see the Master Lease or Agreement to Provide Insurance.

**Remittances:** Rentals/Payments should be mailed to

TRANS LEASE, INC.
PO Box 16464
Denver, CO 80216-0464

**Preauthorized Checking (PAC):** Payments can be automatically deducted from your checking account at any bank.  All you need to do is contact our office to get the paperwork rolling.  Payments come out on your due date.  A set-up fee of $15 will be billed to your account.

**Equipment Damage:** Any accidents or damage to the equipment you have leased or financed should be reported immediately to your insurance company and our office.

Dated: August 30, 2006

Lessee: WOLPER CONSTRUCTION, INC.

By: _____     By: _____

Title: PRESIDENT                 Title: PRESIDENT



# NOTICE OF ASSIGNMENT

Lease Number:  1-TR-10608-067-00001

August 30, 2006

WOLPER CONSTRUCTION,INC.
3750 W 500 S
SALT LAKE CITY, UT 84104

Dear WOLPER CONSTRUCTION,INC.:

Reference is made to the Lease Agreement dated as of August 30, 2006 (the "Lease Agreement") and Lease No. 1-TR-10608-067-00001 between TRANS LEASE, IN, DBA TRANS LEASE, INC.; TRANS LEASE, INC. OF COLORADO; GEP LEASING, INC. (Secured Party), as secured party, and you, WOLPER CONSTRUCTION,INC., as lessee (the Lease Agreement), and any applicable equipment schedule are referred to collectively as the "Lease Agreement."

Please be advised that the Secured Party has assigned its rights, including the right to receive payment, under the Lease Agreement effective August 30, 2006 to DC FIN SVCS AMER LLC. You shall continue to make payment to the Secured Party; provided, however, no prepayment or change in the manner or recipient of payments under the Lease Agreement shall be made without the prior written consent of DC FIN SVCS AMER LLC.

You confirm that the Lease Agreement is for a period of 48 months in which payments commenced August 30, 2006 and will end August 30, 2010. At August 30, 2006, there will be aggregate payments remaining due (exclusive of sales taxes and other similar payments) of $212,507.44 consisting of 48 payments of of $3,572.03 each, and one payment of $41,050.00.

DC FIN SVCS AMER LLC shall have and exercise any and all rights and powers of the Secured Party under the Lease Agreement but shall not be obligated to perform any of such obligations. To induce DC FIN SVCS AMER LLC to accept the assignment of the Lease Agreement, you agree to continue to make timely payments and other amounts payable under the Lease Agreement to or for the benefit of DC FIN SVCS AMER LLC, notwithstanding any defense, claim, setoff, abatement or recoupment of any nature, whether by reason of a breach of Agreement (you reserve, however, the right to have recourse for such defense or claim against the Secured Party). Additionally, you agree that (i) you will make payments as outlined above, (ii) the Lease Agreement is in full force and effect, (iii) you are not in default, (iv) the equipment under the Lease Agreement has been installed and accepted by you, and (v) Secured Party is fully performing at the present time all the matters it has obligated itself to perform as provided in Lease Agreement. If you receive notice for any reason from DC FIN SVCS AMER LLC, directing that payments due under the Lease Agreement shall be made directly to DC FIN SVCS AMER LLC Secured Party or Secured Party DC FIN SVCS AMER LLC's designee, you are authorized to abide by and comply with such instructions for remittance of the payments directly to DC FIN SVCS AMER LLC without any further consent by or notice to the Secured Party.

Please sign the original and a copy of this letter, indicating your acknowledgment and agreement to this letter.

Sincerely,

TRANS LEASE, INC. DBA TRANS LEASE, INC.; TRANS LEASE, INC. OF COLORADO; GEP LEASING, INC.

By: _____

Title:   Sr. Vice President

Date:  August 30, 2006

ACKNOWLEDGED BY:
Borrower: WOLPER CONSTRUCTION,INC.

By: _____          By: _____

Title:   PRESIDENT                            Title: _____

# POWER OF ATTORNEY

WOLPER CONSTRUCTION,INC., LESSEE, appoints Trans Lease, Inc. DBA Trans Lease, Inc.; Trans Lease, Inc. of Colorado; GEP Leasing, Inc., LESSOR, P.O. Box 16464,Denver, CO 80216-0464,its agent and attorney-in-fact, with full power of substitution, for and on behalf of Lessee, to prepare, execute, sign, file and record on its behalf without the signature of Lessee: (a) any and all necessary UCC-1 financing statements and other documents required to perfect Lessor's interest in the motor vehicle described below and (b) all instruments and documents, applications and certificates of title related to the application for certificate of title, registration, license and/or renewal and transfer of license plates with respect to the motor vehicle described below; to execute, file and record any and all instruments and documents necessary to protect and perfect Lessor's interest in the motor vehicle described below; and to assign the name of the Lessee with the same force and effect as if signed by Lessee. Without limiting the foregoing, Lessee further agrees, if Lessor so requests, to execute any instrument or financing statement necessary to protect or reflect Lessor's interest in the motor vehicle and to pay the cost of filing or recording all such instruments or documents.

2006 STERLING SC8000 W/ SCHWARTZ A7000 STREET SWEEPER S/N 06A70000177.                49HAADBV86DW51040

This Power of Attorney will continue to be effective even though the undersigned becomes disabled, incapacitated or incompetent. The undersigned agrees that any third party who receives a copy of this document may rely on and act under it. Revocation of the Power of Attorney is not effective as to a third party until the third party learns of the revocation. The undersigned agrees to indemnify the third party for any claims that arise against the third party because of reliance on this Power of Attorney.

Date:  August 30, 2006

WOLPER CONSTRUCTION,INC.

By:     X                                          By:     _____

Title:     PRESIDENT                               Title:     _____

In the presence of:

Witness:     X  _____

Dated:     X  9/1/06



# TRANS LEASE, INC.

# TRAC MOTOR VEHICLE MASTER LEASE

### 1-TR-10608-067

| (Lessor) | | (Lessee) |
|---|---|---|
| **TRANS LEASE, INC. DBA TRANS LEASE, INC.;** | | **WOLPER CONSTRUCTION,INC.** |
| **TRANS LEASE INC. OF COLORADO;** | | **3750 W 500 S** |
| **GEP LEASING, INC.** |  | **SALT LAKE CITY, UT 84104** |
| **PO Box 16464** | | |
| **Denver, CO 80216-0464** | | |

This Lease Agreement (hereinafter "Lease") is entered into on August 30, 2006 by and between **TRANS LEASE, INC. DBA TRANS LEASE, INC; TRANS LEASE, INC. OF COLORADO; GEP LEASING, INC.** (hereinafter "Lessor") and WOLPER CONSTRUCTION,INC. (hereinafter "Lessee").

1.     **VEHICLE(S).** Lessor agrees to lease to Lessee and Lessee agrees to lease from Lessor the Vehicle(s) described in each Schedule A now or hereafter executed pursuant to this Lease which are and shall be incorporated herein by reference (hereinafter referred to as "Schedule" or "Schedules"), together with any attachments or accessories now or hereafter incorporated in or attached to said Vehicle(s).

It is hereby agreed that additional Vehicle(s) may be added from time to time to additional Schedules executed by Lessor and Lessee, which Schedules shall be incorporated herein. Each such Schedule, when so executed, shall constitute a separate Lease of the Vehicle(s) described therein. Except as specifically modified with respect to Vehicle(s) by the appropriate Schedule identifying such Vehicle(s), all of the terms and conditions of this Lease shall govern the rights and obligations of Lessee and Lessor with respect to the Vehicle(s) described therein. Whenever reference is made herein to "this Lease" or "the Lease," it shall be deemed to include the various Schedules identifying all Vehicle(s) leased hereunder. For purposes of this Lease, Schedule A as well as any other schedule(s) hereafter executed shall be referred to as the "Schedule(s)" and the Vehicle(s) referred to therein shall hereinafter be described as the "Vehicle(s)."

2.     **TERM.** This Lease shall become effective and commence on the delivery date stated on the applicable Schedule and shall continue until all rental payments as hereinafter described, and all of the Lessee's other obligations hereunder, have been satisfied in full by Lessee.

3.     **RENTAL.** Lessee agrees to pay Lessor monthly payments in an amount and for the term indicated in the Schedule(s) without reduction or setoff for any reason, except as otherwise provided in this Lease. The first payment shall be due on the date stated in the Schedule(s).

LESSEE EXPRESSLY UNDERSTANDS AND AGREES THAT IN THE EVENT THE PRESENT FEDERAL TAX LEGISLATION IS MODIFIED, ALTERED, REVOKED OR SUPPLEMENTED BY NEW FEDERAL TAX LEGISLATION DURING THE TERM OF THE LEASE, THE RESULT OF WHICH WOULD BE TO REDUCE OR DISALLOW ACCELERATED DEPRECIATION OR OTHER FEDERAL TAX BENEFITS PRESENTLY AVAILABLE TO LESSOR, LESSEE'S MONTHLY LEASE PAYMENTS WILL BE INCREASED BY THE AMOUNTS NECESSARY TO COMPENSATE LESSOR FOR SUCH LOST TAX BENEFITS.

4.     **LATE CHARGES AND INSUFFICIENT FUNDS.** In the event Lessee fails to pay rental payments, or any other sum required to be paid by Lessee, within ten (10) days after the date such payment or sum is due, Lessor may, without declaring Lessee to be in default, charge Lessee an amount equal to five percent (5%) of such past due amounts or the maximum amount allowed by applicable state law. In addition, Lessor may collect from Lessee a fee for dishonored checks in an amount not to exceed $20 or the maximum amount permitted by applicable law, and Lessor may pursue any other right or remedy permitted by statute with respect to dishonored checks. Lessor's exercising of this right or the imposition of any charge shall in no way alter Lessor's right to additionally or subsequently declare Lessee to be in default and to seek the remedies provided for in this Lease.

5.     **CHARGES AND TAXES.** Lessee agrees to pay when due all fees, sales and use taxes, duties, assessments, highway use tax, or other taxes and charges, however designated, now or hereafter levied or based upon the purchase, rental, ownership, use, possession, leasing, operation, control, maintenance or sale of the Vehicle(s), whether or not paid or payable by Lessor (excluding Lessor's net income, franchise and business and occupation taxes), and shall supply Lessor with proof of payment upon written demand therefor by Lessor.

6.     **INSURANCE.** With respect to the Vehicle(s) leased hereunder, Lessee shall provide and maintain, at its own expense, Commercial Auto Insurance for bodily injury or death and property damage liability insurance with a combined single limit of not less than $1,000,000 per occurrence, or such other higher limit as may be required by law. Lessee shall also provide and maintain, at its own expense, collision and upset insurance with a deductible of not more than $2,500, and fire, theft and combined additional coverage with a deductible of not more than $2,500.

All insurance required herein shall protect Lessor and Lessee as their interests may appear. All insurance required to be provided by Lessee shall designate Lessor as an additional insured and loss payee and shall, by the terms of the policies or appropriate endorsements thereto (a) be primary to, and in no respect excess or contributory to or contingent upon any liability insurance provided by Lessor; (b) provide that all insurance proceeds are to be payable jointly to Lessor and Lessee; and (c) provide that all insurance proceeds shall be mailed to Lessor at the address set forth above.

This Lease has been assigned to one or more secured parties and the purchase or assignment of this Lease would violate the rights of the secured parties.

1

All insurance required herein to be provided by Lessee shall be placed with an insurance company acceptable to and approved by Lessor. Lessor shall be provided with certificates of insurance (or other document(s) acceptable to Lessor) evidencing the insurance coverage required herein and establishing that such insurance is in effect with respect to the Vehicle(s) leased hereunder and will not be changed, altered or canceled by the issuing insurance company without thirty (30) days' prior written notice to Lessor.

With respect to any such insurance, Lessee hereby appoints Lessor, or Lessor's assignee, as Lessee's attorney in fact, with full power (a) to determine at Lessor's discretion what is a reasonable sum for settlement and/or compromise of claim or suit; (b) to institute suit in Lessee's name, or in Lessor's name, or both, and to add any reasonable costs or expenses relating to the suit or claim, including legal fees and expenses, to the balance of Lessee's obligation(s) under the Lease; (c) to sign in Lessee's name any settlement, draft or check.

Lessee agrees that, with respect to insurance proceeds payable jointly to Lessor and Lessee, the proceeds are to be applied first against any claim against Lessor. Lessee agrees that any excess or umbrella liability insurance that it may have in addition to the minimum requirements set forth above shall also include the interest of Lessor to the extent permitted by law.

7.      **LESSOR'S RIGHT TO PAY.** If Lessee fails to insure the Vehicle(s) as provided by Paragraph 6 hereof or if Lessee fails to pay and discharge all fees, taxes, liens, and other charges as provided by Paragraph 5 hereof, Lessor, without prejudice to any other rights hereunder, may (but shall not be obligated to) provide such insurance, or may pay and discharge such fees, taxes, liens or other charges, and Lessee agrees to repay said sums to Lessor upon demand. If Lessee fails to repay Lessor within ten (10) days of Lessor's demand for repayment, Lessor may assess a late charge on such amounts in accordance with Paragraph 4 hereof. If such amounts, including late charges, remain unpaid for ten (10) additional days, then Lessee shall also be liable for interest thereon at the default rate of interest set forth in Paragraph 14 hereof, or the maximum amount permitted by law.

8.      **INDEMNIFICATION.** Lessee assumes liability for and agrees to defend, indemnify and hold Lessor harmless from any claim (including, without limitation, claims involving strict liability, tort liability or product liability), liability, loss, cost, expense or damage of every nature (including, without limitation, fines, forfeitures, penalties, settlements, and attorneys' fees) by or to any person whomsoever and regardless of its basis, which directly or indirectly results from or pertains to the purchase, sale, leasing, manufacture, delivery, ownership, use, possession, operation, condition (including, without limitation, latent or other defects, whether or not discoverable, and patent, trademark and copyright infringement), removal, return or storage of the Vehicle(s). **LESSEE'S INDEMNITIES AND LIABILITIES SHALL CONTINUE IN FULL FORCE AND EFFECT, NOTWITHSTANDING THE EXPIRATION OR CANCELLATION OF THIS LEASE FOR ANY REASON.**

Upon request by Lessor, Lessee shall assume the defense of all demands, claims, actions, suits and all other proceedings against Lessor for which indemnity is provided herein and shall allow Lessor to participate in the defense thereof. Lessor shall be subrogated to all rights of Lessee for any matter for which Lessor has assumed obligation hereunder and may settle such demand, claim or action without Lessee's prior consent.

9.      **ASSIGNMENT.** All right, title and interest in and to this Lease, as well as to the Vehicle(s) leased hereunder, may be assigned at any time by Lessor without Lessee's consent. Upon notice of any assignment by Lessor or its assignee, Lessee shall make all payments coming due hereunder to the assignee without offset, counterclaim or defense of any kind. It is expressly understood that any reference in this Lease to "Lessor" shall be construed to mean Lessor or Lessor's assignee.

Lessee shall not assign, transfer or sublet this Lease, the Vehicle(s) leased hereunder or Lessee's interest hereunder without Lessor's prior written consent (which may be withheld at Lessor's sole discretion), nor shall Lessee's interest hereunder inure to the benefit of any trustee, receiver, creditor or successor of Lessee or its property, whether or not in bankruptcy, or whether by operation of law or otherwise.

10.     OWNERSHIP/TITLE. Ownership of and title to all Vehicle(s) shall be and remain in Lessor, notwithstanding possession and use thereof by Lessee. Lessee has not acquired, and will not acquire by its acceptance of this Lease, any proprietary rights or interest in the Vehicle(s). Lessee agrees that it will, upon the request of Lessor, execute and deliver to Lessor notice or informational filings indicating Lessor's and Lessee's respective interest in the Vehicle(s). Lessor and Lessee intend for this Lease to be a lease (and not an agreement of purchase granting a security interest in favor of Lessor). Lessee acknowledges that unless and until Lessor allows Lessee to purchase the Vehicle(s) pursuant to Paragraph 16 below, Lessee's interest shall be that of lessee and not owner.

11.     **USE, INSPECTION AND ALTERATIONS.** Lessee at its sole expense shall have the Vehicle(s) leased hereunder serviced in accordance with the manufacturer's approved maintenance schedules, ensure that maintenance records are available for review by Lessor at reasonable time(s) and place(s) and maintain the Vehicle(s) in good repair, appearance, functional order, and good lawful operating condition; shall not use or permit the use of the Vehicle(s) in any unintended, injurious or unlawful manner; shall not subject the Vehicle(s) to unusual, extreme or severe operating conditions; and shall not change or alter the Vehicle(s) without Lessor's prior written consent, except that Lessee shall make such alterations and improvements, at Lessee's expense, as may be required from time to time to meet the requirements of law or of any federal, state or local governmental authority having jurisdiction over the Vehicle(s). To ensure compliance with the foregoing, Lessor shall have the right, at any reasonable time, to enter Lessee's premises or elsewhere to inspect the Vehicle(s) or to observe its use. All improvements and alterations, other than improvements which can be readily removed without causing damage to the Vehicle(s) and without rendering them unable to comply with law, shall become part of the Vehicle(s) and shall be the property of Lessor.

12.     **LOSS AND DAMAGE.** Lessee hereby assumes the risk of loss, including theft or destruction, and the risk of damage to the Vehicle(s) leased hereunder, from any and every cause whatsoever, whether or not such loss is covered by insurance. Loss or damage to the Vehicle(s), or any part thereof, shall not relieve Lessee of any obligations under the Lease, and there shall be no abatement of rental otherwise due hereunder during the period a Vehicle(s) is stolen or missing or during the time required for any repair, adjustment, servicing or replacement of Vehicle(s). In no event shall Lessor be liable to Lessee, its employees or agents, for business or other losses by reason of loss, theft, destruction, repair, servicing or replacement of any Vehicle(s).

If Vehicle(s) is damaged or destroyed in an accident or other occurrence or confiscated by any governmental authority or is stolen, abandoned, or subjected to undue peril, Lessee will notify Lessor within ten (10) days of such occurrence or condition.

Lessor may cancel this Lease with respect to Vehicle(s) if the Vehicle(s) is beyond reasonable repair. If the Lease is canceled, Lessee's cancellation liability shall be the amount that Lessee would have to pay if Lessee had defaulted on the terms of the Lease as set forth in Paragraph 14 hereof. Lessor shall subtract the amount of any insurance proceeds payable to Lessor in connection with the damage or loss from Lessee's liability. Lessee expressly understands and agrees that in the event of a total loss, Lessee's insurance policy may not be sufficient to completely satisfy Lessee's indebtedness (as set for this Paragraph 14 hereof); and Lessee agrees that in such event lessee shall be liable for, and shall pay Lessor upon demand therefor, the amount of any such deficiency.

2

13.  **SPECIAL, REPRESENTATIONS, WARRANTIES AND COVENANTS OF LESSEE.** Lessee represents, warrants and covenants to Lessor that: (a) the Vehicle(s) will not be used outside of the United States without prior written consent of Lessor; (b) Lessee is not and will not become an organization exempt from tax imposed by Chapter 1 of the Internal Revenue Code of 1986 nor will Lessee allow any such entity to use the Vehicle(s); and (c) Lessee is not the United States, any State (including the District of Columbia) or political subdivision thereof, or any agency or instrumentality of the United States, any State or political subdivision thereof or any international organization, nor will Lessee allow any such entity to use the Vehicle(s).  Lessee acknowledges that if any representation, warranty or covenant herein is false or if it takes any action or omits to take any action which causes any such representation, warranty or covenant to be false or to be breached, Lessor, or the affiliate group of which it is a member, may suffer adverse tax consequences.  Accordingly, Lessee agrees that if it breaches any such representation, warranty or covenant or if the same shall be or become false, this Lease shall be deemed to be in default and Lessee shall be liable to Lessor in the manner and for the amounts specified in Paragraph 14 hereof.

14.  **DEFAULT.**  Time is of the essence in this Lease, and Lessor may declare this Lease to be in default upon the occurrence of any of the following events:  (a) Lessee's failure to pay when due the full amount of any payment required hereunder, including, without limitation, rent, taxes, liens, insurance, indemnification, repair or other charges, or Lessee's failure to perform any other obligation, agreement or affirmation required by the terms hereof to be performed by Lessee; or (b) the making of any false or misleading statement by Lessee prior to or in connection with this Lease; or (c) Lessee's death, dissolution, insolvency or other termination of existence; or (d) Lessee's becoming the subject of a petition in bankruptcy, either voluntarily or involuntarily, or making an assignment for the benefit of creditors, or being named or subjected to a suit for the appointment of a receiver; or (e) seizure of or levy upon the Vehicle(s) leased hereunder by reason of any legal or governmental process directed against Lessee; or (f) any bankruptcy, insolvency, termination, death, or default of any guarantor of Lessee's obligations under this Lease.

Upon Lessee's default, Lessee shall be liable for, and shall pay Lessor upon demand, the sum of the following as liquidated damages:  (i) any Lease payments or other amounts due and owing as of the time of default; plus (ii) the balance of the Lease payments Lessee would have paid had the Lease gone to full term, less a deduction for the time value of such payments; plus (iii) the Residual Value as set forth in the applicable Schedule(s) to the Lease; plus (iv) an amount equal to one monthly Lease payment; plus (v) any security deposit held by Lessor under the Lease, plus (vi) any and all commissions, fees or other amounts paid by Lessor's assignee as consideration for the assignment of this Lease.

In the event of Lessee's default, Lessee agrees to surrender the Vehicle(s) to Lessor at such location as Lessor may designate, and the Lessor may take possession of the Vehicle(s) wherever the same may be found, whether on Lessee's premises or elsewhere.  Lessee further agrees that any and all rights or interest Lessee may have in the Vehicle(s) shall be extinguished upon Lessee's default.  In the event of Lessee's default, Lessee voluntarily, knowingly, and intelligently waives any right to have a hearing prior to losing possession of the Vehicle(s) by means of a court order.

If the repossessed Vehicle(s) contain property not belonging to Lessor, Lessor may notify Lessee in writing that if Lessee does not remove such property from Lessor's premises within seven (7) days, Lessor shall have the right to store and/or dispose of such property.  The notice shall request the name, address, and telephone number of the owner of the property.  Lessee shall be responsible for all costs and expenses incurred by Lessor in storing and/or disposing of the property and shall defend, protect, and indemnify Lessor from all loss, cost, damage, or expense Lessor may suffer or incur as a result of the property being located in the Vehicle(s).

If Lessor obtains possession of the Vehicle(s) following Lessee's default, Lessor may, but shall not be obligated to dispose of the Vehicle(s) by public or private sale in the wholesale or retail market, and such disposition may be with or without notice to Lessee or, if Lessor so elects in its sole discretion, Lessor may relet any one or more of the Vehicle(s).  In the event of a public or private sale or reletting, Lessor shall deduct from Lessee's default liability the amount of any proceeds obtained upon disposition of the Vehicle(s) less any reasonable costs or expenses incurred by Lessor in connection with the repossession, storage, restoration and/or disposition or reletting of the Vehicle(s).  Lessor may assess, and Lessee will be liable for, interest on the total amounts Lessee may owe to Lessor from time to time by reason of Lessee's default at the rate of eighteen percent (18%) per annum or at the highest rate allowed by applicable law, whichever is less, both before and after judgment, to the extent permitted by law.  Lessee shall also be liable for any reasonable collection or legal costs or expenses incurred by Lessor, including reasonable attorneys' fees and court costs.

If Lessee is Lessee under two or more Leases with Lessor, a default under one Lease shall be a default under all Leases.  Lessor shall have the right to declare all Leases in default and with respect to such Leases shall have all of the rights and be entitled to exercise all remedies set forth herein with respect to a default by Lessee.  Lessee shall, with respect to all Leases, have all of the obligations and liabilities set forth herein with respect to a default by Lessee.  Any monies received by Lessor under any Lease may be applied by Lessor to any Lease then in effect, in such amounts and in such order as Lessor in its sole discretion determines.

Lessee understand and agrees that the remedies provided under this Lease in favor of Lessor upon default shall not be exclusive, but shall be cumulative and in addition to any other remedies available to Lessor, whether existing in law, equity or bankruptcy.

15.  **SECURITY DEPOSIT.**  Any security deposit made by Lessee hereunder shall be returned to Lessee, without interest, upon the expiration of the Lease; provided, however, that in the event of a default by Lessee hereunder, the security deposit shall be applied to reduce any obligations or liabilities of Lessee to Lessor elsewhere provided for in this Lease.

16.  **PURCHASE OPTION.**  It is understood and agreed that Lessee has no option to purchase the Vehicle(s) at any time; however, the Lessee may have the opportunity to purchase the Vehicle(s) upon the expiration of the Lease for an amount equal to the Residual Value set forth in the Schedule(s).  In addition, Lessee must pay any official fees and taxes assessed in connection with the purchase, plus any other amounts due hereunder but not paid at the time of termination.  Lessee expressly understands that Lessee shall have absolutely no equity or other ownership rights in the Vehicle(s) unless and until Lessee purchases said Vehicle(s) pursuant to this paragraph.

17.  **END OF LEASE TERMINATION LIABILITY.**  If Lessee does not purchase the Vehicle(s) at the end of the Lease term, Lessee shall, at Lessee's expense, assemble and return the Vehicle(s) leased hereunder unencumbered at Lessor's place of business, or at such other place as Lessor specifies, in the same condition, appearance and functional order as received, reasonable and ordinary wear and tear excepted.

Upon the return of the Vehicle(s) as herein provided, Lessor will sell the Vehicle(s) at a public or private sale with or without notice to Lessee.  If the amount received from the sale (less sales tax payable, reasonable sales commissions and restoration costs, if any) exceeds the Residual Value of the Vehicle(s) set forth in the Schedule, the amount of such surplus shall be paid to Lessee.  If the amount received from the sale (less sales tax payable, reasonable sales commissions and restoration costs, if any) is less than the Residual Value of the Vehicle(s) set forth in the Schedule(s), Lessee shall be liable for, and shall pay upon demand, the amount of such deficiency to Lessor, except that such deficiency shall not exceed the amount set forth in the Terminal Rental

3

Adjustment Clause. Lessee acknowledges that the potential benefit or liability contemplated by this Paragraph 17 is not intended to create any equity interest in the Vehicle(s) for Lessee but rather designed as an incentive for Lessee to properly maintain the Vehicle(s) as required by this Lease.

18.    DISCLAIMER OF WARRANTIES. LESSOR IS NOT THE PRODUCER, MANUFACTURER OR DESIGNER OF THE VEHICLE(S) LEASED HEREUNDER, AND LESSOR MAKES NO WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO THIS LEASE OR THE EQUIPMENT LEASED HEREUNDER, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR INTENDED USE. LESSOR SPECIFICALLY DISCLAIMS ANY AND ALL LIABILITY FOR INCIDENTAL, CONSEQUENTIAL, OR SPECIAL DAMAGES.

Lessor agrees, however, to assign to Lessee all of the manufacturer's standard warranties applicable to the Vehicle(s), together with any rights and remedies afforded thereunder, to the extent that the said warranties, rights and remedies are assignable.

19.    ENTIRE AGREEMENT. This Lease and the Schedule(s) referred to herein constitute the entire agreement of the parties hereto. No waiver or modification of this Lease shall be effective unless in writing and signed by both parties. No waiver or indulgence by Lessor of the deviation by Lessee of any performance required herein shall be deemed a waiver of Lessor's rights to subsequent or other full and timely performance.

20.    SUCCESSOR AND ASSIGNS. This Lease shall be binding upon and inure to the benefit of any permitted successors and assigns of the respective parties hereto.

21.    COSTS AND ATTORNEYS' FEES. If Lessor employs an agent or other party for purposes of collection or repossession, or if Lessor refers this Lease to an attorney for purposes of collection, repossessions or enforcement of Lessor's interests herein, Lessee agrees to reimburse Lessor upon Lessor's demand for all of Lessor's reasonable repossession costs, attorneys' fees and expenses to the extent permitted by applicable state law.

22.    NOTICES. All notices and payments shall be mailed to the respective parties at the addresses hereinabove indicated, or such other address as a party may provide from time to time in writing.

23.    GOVERNING LAW AND JURISDICTION. This Lease shall be deemed to have been made in the state of Colorado and shall be interpreted, and the rights and liabilities of the parties determined, by the laws and court of that state (except for choice of law rules), to the exclusion of the courts of any other state or country; provided, however, that Lessor shall have the right, but not the obligation, to litigate in any state or country in which the Lessee, the Vehicle(s), or any of the Lessee's or any guarantor's assets are located. Lessor and Lessee acknowledge that this Lease was entered into at Lessor's address above. Lessee expressly waives any and all right to a jury trial regarding any dispute arising hereunder. Lessee agrees to venue in Adams County, Colorado.

24.    SEVERABILITY. If any of the provisions of this Lease are contrary to, prohibited by, or held invalid under applicable laws or regulations of any jurisdiction in which this Lease is sought to be enforced, then that provision shall be considered inapplicable and omitted but shall not invalidate the remaining provisions.

LESSEE ACCEPTS AND AGREES TO THE TERMS AND CONDITIONS OF THIS LEASE.

I HAVE RECEIVED AND READ A COMPLETED COPY OF THIS AGREEMENT BEFORE SIGNING BELOW.

Dated: August 30, 2006

Lessee: WOLPER CONSTRUCTION, INC.

By: _____          By: Richard Wolper
Title    PRESIDENT                     Title  President


BY SIGNING BELOW, THE LESSOR ACCEPTS AND AGREES TO THE TERMS AND CONDITIONS OF THIS LEASE.

Lessor: TRANS LEASE, INC. DBA TRANS LEASE, INC.; TRANS LEASE, INC. OF COLORADO; GEP LEASING, INC.

By: _____
Title    Sr. Vice President

4



# CONTINUING GUARANTY

For Valuable Consideration, the receipt and sufficiency of which are hereby acknowledged, the undersigned

WOLPER, RICHARD

(name of each guarantor)

and each of them hereafter called the "Guarantors," do hereby jointly and severally guaranty to Trans Lease, Inc., hereinafter called the "Company," that

**WOLPER CONSTRUCTION, INC., 3750 W 500 S SALT LAKE CITY UT 84104**

(OBLIGOR)

hereinafter called the "Obligor," shall promptly and fully pay any and all liabilities, obligations which now exist and/or which may hereafter accrue in any manner from said Obligor to said Company, and in the event the said Obligor fails at any time or times to promptly pay any and all obligations which now exist and/or may hereafter accrue from said Obligor to said Company as the same become due, the undersigned and each of them hereby jointly and severally promises to pay any and all such obligations as the same become due from said Obligor to said Company, forthwith, upon demand and including attorneys' fees incurred in enforcing payment under this instrument, all without relief from valuation and appraisement laws.

This is a continuing Guaranty and by this instrument, the Guarantors guaranty the prompt payment of any and all obligations which may now exist and/or may hereafter accrue at any time or times from said Obligor to said Company until the Guarantors have delivered to said Company a notice signed by them at their election not to guaranty any new obligations from said Obligor to said Company, which may thereafter accrue. Such notice shall not in any way affect the promise of the Guarantors hereunder to pay any and all obligations from said Obligor to said Company, existing at the time such notice is given.

Each of the Guarantors waives all notice of acceptance of this contract by the Company, all notice of the extension of credit from time to time given by said Company to said Obligor and all notice of the amount of the obligations of the Obligor to the Company, which may exist from time to time, and agree that if any one of the undersigned desires at any time to ascertain the amount of liability accrued under this Guaranty, he will make inquiry from said Company.

Each of the Guarantors hereby waives presentment for payment, protest and notice of protest and of nonperformance of any note or notes made or hereafter made by the Obligor to said Company or of any other items or obligations held or hereafter held by said Company against said Obligor. Each of the Guarantors further waives all rights which he has or may have by statute or otherwise, to require the Company to institute suit against said Obligor or to exhaust its rights or remedies against said Obligor, the Guarantors hereunder and each of them being bound to the payment of each and all obligations of said Obligor to said Company, whether now existing or hereafter accruing as fully as if each obligation was directly owing to said Company by him and as fully as if each Guarantor was a joint maker with Obligor upon each note made or hereafter made by said Obligor to said Company. Each of the Guarantors further waives notice of adverse change in Obligor's financial condition or of any other fact which might materially increase Guarantor's risk.

Forbearance on the part of the Company to take steps to enforce the obligations held by it against said Obligor, arising from his default in any respect whatever or the giving of further time to said Obligor, shall in no way release the Guarantors or any of them, but they and each of them shall remain liable hereunder for the prompt payment of all notes signed by said Obligor and made to said Company and all renewals thereof and all other obligations which may now exist and/or may hereafter accrue from said Obligor to said Company.

The Company may take from said Obligor any new, additional or substituted security from time to time without in any way impairing the obligation of the Guarantors, nor shall the impairment of the security which said Company may from time to time hold from said Obligor in any way operate to discharge any of the Guarantors in whole or in part, it being specifically agreed that the Company is not required to exercise diligence to enforce its rights against said Obligor. Each of the Guarantors hereby waives for himself, his heirs, executors and personal representatives any rights whatsoever which he may acquire by law or otherwise to any equitable assignment of any or all of any security which the said Company may hold as security for the obligations guaranteed hereby until such time as all obligations guaranteed hereby are paid in full to the said Company.

Each Guarantor agrees that the balance due and unpaid at any time from said Obligor to said Company, as shown by the books of the Company if approved as correct by the Obligor, shall be received as conclusive evidence of the amount of such obligations owed by said Obligor to the Company as against said Obligor and shall not be disputed or questioned by any of the undersigned Guarantors and that none of the Guarantors can avail himself of any defense whatever which said Obligor may have against said Company, other than the payment of said notes and other obligations. Each of the Guarantors hereby for himself, his heirs, executors and personal representatives waives all defenses given to sureties or Guarantors, at law or in equity, other than the payment of said obligations and the fact that certain of said defenses are hereby expressly mentioned, does not mean that other defenses are not also waived. It being expressly agreed that said Company cannot prejudice its rights against said Guarantors or any of them by any act or omission on its part with respect to any obligations which may not exist and/or may hereafter accrue from said Obligor to said Company. All remedies or actions for the enforcement by said Company of the payment of such obligations are cumulative and the pursuit of one shall not preclude the enforcement of any other rights or remedies.

This agreement constitutes the entire contract and no waivers or modifications shall be valid unless written upon or attached to this contract.

This agreement shall extend to and bind the heirs, executors, administrators and assigns of each Guarantor hereto.

This contract shall inure to the benefit of all transferees, assignees and/or endorsers of said Company of any part or parts or all of the obligations herein guaranteed.

In the event this instrument is signed by only on person, then the term "Guarantors" herein shall be considered to be in the singular.

IN WITNESS WHEREOF, the said Guarantors have hereunto subscribed their names this 30th day of August 2006.

_____
Witness

Signature: _____
WOLPER, RICHARD

2123 PHEASANT WY
HOLLADAY, UT 84117

_____
Witness

Signature: _____

_____
Witness

Signature: _____


**ALL SIGNATURES MUST BE WITNESSED TO AVOID DELAY IN EQUIPMENT DELIVERY.**

2

# CERTIFIED COPY OF RESOLUTIONS

## WOLPER CONSTRUCTION, INC.

The undersigned certifies that undersigned is the Secretary of WOLPER CONSTRUCTION, INC., a corporation ("this Corporation"), and that as such, undersigned is authorized to execute this Certification on behalf of this Corporation, and further certifies that the following is a true and correct copy of resolutions adopted at a meeting of the Board of Directors of this Corporation, duly called and held on August 30, 2006, at which meeting a quorum was present and acting throughout or adopted by consent action dated _____, and that the proceedings of said meeting or action were in accordance with the charter and bylaws of this Corporation, and that said resolutions have not been in any way amended, annulled, rescinded or revoked and are in full force and effect.

**WHEREAS,** an officer of this Corporation has executed or is about to execute one or more lease or loan agreements with <u>Trans Lease, Inc.</u> ("Lessor" or collectively, the "Leases"), pursuant to which this Corporation may lease or finance certain vehicles, including without limitation, automobiles, trucks, tractors, trailers and semitrailers from time to time as described therein; and

**WHEREAS,** the Directors of this Corporation have examined the Lease(s) or Loan and Security Agreement(s) and approved the terms and conditions thereof;

**NOW, THEREFORE, BE IT RESOLVED** that this Corporation requires ____ signature(s) to execute documents on behalf of this Corporation of which the following officers, whose signatures appear below, be and hereby are authorized to execute the Lease(s) or Loan and Security Agreement(s) on behalf of this Corporation and to perform all acts and execute all instruments and documents as are, in the opinion of such officer, necessary, desirable or proper to carry into effect the purpose of the foregoing resolution and to effect the performance by this Corporation of its obligations under the Lease(s) or Loan and Security Agreement(s).

| Name | Title(s) | Signature |
|---|---|---|
| RICHARD WOLPER | PRESIDENT | X |
| | | X |
| | | X |

I do further certify that this Corporation is in good standing in all jurisdictions in which it is required to be qualified to do business and the execution of the Lease(s) or Loan and Security Agreement(s) and any other instruments and documents authorized hereunder is not in violation of the charter, bylaws or any agreements made by this Corporation.

**IN WITNESS WHEREOF,** I have hereunto set my hand and affixed the seal of this Corporation this date.

Date:  August 30, 2006

SECRETARY

(CORPORATE SEAL)

Exhibit "B"

# UTAH CERTIFICATE OF TITLE

## ORIGINAL TITLE



**Title Number**   UT6793725

Vehicle Type TRUCK   Year 2006   Make STRG   Model SC8000   Bdy Sty TILT CAB
VIN/HIN 49HAADBV86DW51040   2nd VIN
Cylinders 6   Fuel DIESEL   Odometer 0   Date Issued 10/20/2006

#BWNGSFT
#1407 2744 53#
DC FIN SVCS AMER LLC C/O TRANSLEASE INC
PO BOX 354
LISLE IL 60532-0354

*Wolper Construction*
*10608-067 + !*
*10-30-06 road*
*for DCS*
*U-3*

**Owner Information**
TRANS LEASE INC
4475 E 74TH AVE STE 103
COMMERCE CITY CO 80022-1495

*100-0152987*
*068-070-3232*

**Lienholder Information**
DC FIN SVCS AMER LLC C/O TRANSLEASE INC
PO BOX 354
LISLE IL 60532-0354

VEHICLE IS EXEMPT FROM ODOMETER REQUIREMENTS

**Request For Lien Change**
Complete this section. Send the title and required fee to the Division of Motor Vehicles. Please check one box.

| ☑ Issue a title free of liens | ☐ Issue a title showing the following as the NEW LIEN HOLDER |
|---|---|
| LIEN RELEASE - Signature of Lien Holder (releasing interest) | Vehicle owner's signature requesting lien change |
| Title of signer | New lien holder's name |
| Date | Address |
| | City                State    ZIP Code |

**Division of Motor Vehicles**
**UTAH STATE TAX COMMISSION**
210 North 1950 West
Salt Lake City, Utah 84134



TC-127 Rev. 02/01 CDR



B 1902913

ANY ALTERATION OR ERASURE VOIDS THIS TITLE

**INSTRUCTIONS TO SELLER:**

Type or print the information.
NOTARY PUBLIC IS NO LONGER NEEDED. KEEP A COPY.

**INSTRUCTIONS TO BUYER:**

Type or print the information. Warning: DO NOT SIGN IF ODOMETER
DISCLOSURE IS NOT COMPLETE.

**B 1902913**

## A  Assignment Of Title By Registered Owner

**SELLER**

Odometer Disclosure - Required

Enter odometer miles (no tenths)

☐ Reflects ACTUAL mileage
☐ Reflects the mileage IN EXCESS of the odometer mechanical limits.
☐ Is not the actual mileage for this vehicle WARNING - ODOMETER DISCREPANCY

**Sales/Purchase Price - Required**
Date of Sale

Sale Price
$

Print name of seller

Print name of authorized agent selling vehicle (if different from seller name)

Current address of seller (street, city, state and ZIP code)

As owner, I hereby transfer all rights, title and interest to this vehicle to the new owner named below. I certify, to the best of my knowledge, that the title is free and clear of encumbrances, except the lien to the New Lien-Holder, if any. I certify that the odometer and sales information provided is correct. Federal and state law require that the owner provide the mileage upon transfer of ownership of a vehicle. Failure to complete a statement or by providing false statements, may result in fines and/or imprisonment.  KEEP A PHOTOCOPY OF BOTH SIDES OF THIS SIGNED TITLE.

Signature of seller (and joint seller)
X

Date of Sale

**BUYER**

Print name of new owner

Print name of new lien-holder

Street Address

Street Address

City          State          ZIP Code

City          State          ZIP code

Signature of buyer (new owner)
X

Signature of lien-holder (releasing interest)
X

## B  Reassignment Of Title

**SELLER**

Odometer Disclosure - Required

Enter odometer miles (no tenths)

☐ Reflects ACTUAL mileage
☐ Reflects the mileage IN EXCESS of the odometer mechanical limits.
☐ Is not the actual mileage for this vehicle WARNING - ODOMETER DISCREPANCY

**Sales/Purchase Price - Required**
Date of Sale

Sale Price
$

Print name of seller

Print name of authorized agent selling vehicle (if different from seller name)

Current address of seller (street, city, state and ZIP code)

As owner, I hereby transfer all rights, title and interest to this vehicle to the new owner named below. I certify, to the best of my knowledge, that the title is free and clear of encumbrances, except the lien to the New Lien-Holder, if any. I certify that the odometer and sales information provided is correct. Federal and state law require that the owner provide the mileage upon transfer of ownership of a vehicle. Failure to complete a statement or by providing false statements, may result in fines and/or imprisonment.  KEEP A PHOTOCOPY OF BOTH SIDES OF THIS SIGNED TITLE.

Signature of seller (and joint seller)
X

Date of Sale

**BUYER**

Print name of new owner

Print name of new lien-holder

Street Address

Street Address

City          State          ZIP code

City          State          ZIP code

Signature of buyer (new owner)
X

Signature of lien-holder (releasing interest)
X

Utah Code 41-1a-701 requires the owner to remove the license plates when vehicle is sold or disposed.