**The below described is SIGNED.**



**Dated: September 02, 2009**

_____
**WILLIAM T. THURMAN**
**U.S. Bankruptcy Chief Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| In re: | Bankruptcy Number:   08-24034 |
| **WOLPER CONSTRUCTION COMPANY, INC., a Utah corporation.** | Chapter 11 |
| Debtor. | |

## MEMORANDUM DECISION AND ORDER

The matter before the Court is Affinity Bank's ("Affinity Bank")  motion to convert this case to one under chapter 7 or in the alternative, to appoint a chapter 11 trustee (the "Motion"). The Court commenced the hearing on August 19, 2009, the hearing was continued and concluded on August 24, 2009.  Affinity Bank and the Debtor appeared through their respective counsel.  Other parties representing various creditors and interests appeared and their appearances were noted on the record.  The Court heard evidence and arguments and took the matter under advisement.  Section 1112(b)(3) of the Bankruptcy Code[1] mandates that the Court "decide the motion not later than 15 days after the commencement of such hearing, unless the

_____

[1]Unless otherwise noted, all references to Code or Sections shall refer to Title 11, United States Code.

movant consents to a continuance for a specific period of time or compelling circumstances

prevent the court from meeting the time limits established by this paragraph."  The Court has

considered the arguments of counsel and the evidence and now issues this Memorandum

Decision.

    For reasons set forth herein, the Court will postpone ruling on the Motion because

compelling circumstances exist preventing the Court from meeting the time limits in Section

1112(b)(3).

I.    **JURISDICTION AND VENUE**

    The Court has jurisdiction over this matter under 28 U.S.C. § 157(b)(2)(A).  Venue is

appropriate under 28 U.S.C. § 1408(1).  Notice of the hearing was proper in all respects.

II.   **BACKGROUND**

    The Debtor, Wolper Construction, filed Chapter 11 bankruptcy on June 23, 2008.

Richard Wolper signed the petition as the President of the Debtor.  The Debtor is a construction

company that provided labor and materials on land in Utah County, Utah, known as Fox Hollow

( the "Fox Hollow Property") for which it was not completely paid.  The Fox Hollow Property is

owned by Fox Hollow Saratoga, a Utah Limited Liability Company.[2]  This property was

intended to be a huge residential subdivision consisting of hundreds of residential lots.  Only

some of the lots were completed and sold.  The Debtor filed its Statement of Financial Affairs

and Schedules on July 8, 2008 and listed on Schedule B a lien against the Fox Hollow Property

in the amount of $36,523,913.14.  The claims filed to date indicate $175,532,890 in unsecured

claims, $14,500,986 in secured claims and $663,514 in priority claims.  Affinity Bank, as

_____

    [2]  Fox Hollow Saratoga, LLC filed its own chapter 11 bankruptcy on June 29, 2009.

2

servicer for ANB Financial, holds a trust deed on the Fox Hollow Property.  Affinity Bank

asserts  an unsecured claim in the amount of $42,473,310.31 based on the Debtor's guaranty of

the debt.  The Debtor's President has a connection to the Fox Hollow Property as partial owner

of Deer Canyon Saratoga, a Utah Limited Liability Company, which owns the Fox Hollow

Property.

The United States Trustee appointed an Unsecured Creditor's Committee on August 13,

2008.  In addition, Special Counsel was appointed to pursue the mechanic's lien litigation

against Fox Hollow Property on September 8, 2008.  Affinity Bank filed its Section 1112(b)

motion to convert on May 5, 2009, and coupled it with an alternative Section 1104 motion to

appoint a trustee.  The IRS filed a Joinder to Affinity Bank's motion to convert.  All parties

consented to a continuance on August 19, 2009.

The Debtor filed a Section 363(b) motion to sell  (the "Motion to Sell") the estate's

largest asset, the mechanic's lien litigation on the Fox Hollow Property, on July 20, 2009.  If

approved, the sale would provide immediate cash to fund the plan and provide payments to

creditors.  If denied, it may or may not signal an ability of the Debtor to continue with its chapter

11 status.  The Debtor filed a Plan and Disclosure Statement on July 31, 2009.  To date there has

been no hearing set for an approval of the Disclosure Statement; however, the Plan and

Disclosure Statement incorporate provisions from the Motion to Sell that has yet to be approved.

The Court commenced the hearing on the Motion to Sell on August, 17, 2009; however, on the

morning of the hearing, the Debtor received an amended offer that was significantly different

and in order to satisfy the notice requirement for the new offer, the hearing was continued until

September 9, 2009.  The proposed purchaser is Capital Asset Management Resoures, a Utah

Limited Liability Company, whose managing director is a co-owner of Deer Canyon Saratoga, which in turn owns Fox Hollow Saratoga, one of the defendants in the lien litigation.

At the August 19 and 23, 2009 hearings regarding conversion or appointment of a trustee, parties presented evidence and made arguments. The IRS withdrew its joinder on August 18, 2009. Numerous other creditors appeared at the hearing and were unanimously against conversion. The United States Trustee argued that cause exists for conversion or dismissal; however, requested postponement until after the hearing on the Motion to Sell on September 9, 2009. Counsel for the Unsecured Creditor's Committee argued for postponement until after the September 9, 2009 hearing as well. The September 9, 2009 hearing would be beyond the 15 day limit set by Section 1112(b)(3).

## III.    ANALYSIS

Section 1112(b)(1) provides, in pertinent part, that "on request of a party in interest, after notice and a hearing, ... the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter ... if the movant establishes cause." A motion under Section 1112(b) requires the court to rule within 15 days after the commencement of the hearing unless the movant expressly consents to a continuance or "compelling circumstances" prevent the court from ruling within that time limit.[3] The 15 day deadline was added by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").[4] Notably absent from Section 1112(b)(3) is a consequence for failing to rule within the time frame.[5] However, the Court is

---

[3] 11 U.S.C. § 1112(b)(3).

[4] Pub. L. No. 109-08, 119 Stat. 23.

[5] Compare with subsections 362(e)(1) and (2) which allows relief or modification from stay if hearings are not conducted or decisions rendered within certain periods of time.

4

cognizant that this time frame was added to ensure timely disposition of chapter 11 cases,

particularly when a party believes there is cause to dismiss or convert, as continuation of a

chapter 11 case would diminish available resources for the liquidating trustee. Thus far, the only

compelling circumstances cited by courts addressing this have been the press of judicial

business[6] and an acknowledgment that the ruling would have significant consequences to the

parties and needed a comprehensive analysis.[7] However, these circumstances have only been

mentioned briefly in footnotes. Both of these compelling circumstances exist for this case.

Further, the Court sees a need to comment on the definition of "compelling circumstances," to

adequately rule on the issues in this case.

    A.   <u>Press of Judicial Business</u>

This Court's workload has increased significantly during the current calendar year. In

turn, this makes expedient rulings on complex issues difficult. Total case filings have increased

by 62% in 2009, compared to the same period in 2008. Adversary proceedings have increased

51% when compared to 2008. Chapter 11 filings have increased over last year's filing rate

---

[6] *In re DCNC North Carolina I, LLC*, 407 B.R. 651, 654 fn. 5, (Bkrtcy E.D.Pa., 2009); *In re Kent*, 2008 WL 5047799, *1 fn. 2 (Bkrtcy D.Ariz., 2008) (court's busy calendar); *In re AmeriCERT, Inc.*, 360 B.R. 398, 400 fn. 2 (Bkrtcy. D.N.H. 2007) (court's hearing schedule and submission list); *In re Nattel, LLC*, 2006 WL 3832859, *1 fn.1 (Bkrtcy D.Conn. 2006) (judge's meeting, holiday event and trials and hearings on other matters); *In re Jayo*, 2006 WL 2433451, *5 fn. 18 (Bkrtcy D. Idaho, 2006) (trial schedule and several judicial and administrative demands).

[7] *In re DCNC North Carolina I, LLC*, 407 B.R. 651, 654 fn. 5 (Bkrtcy E.D.Pa., 2009); *In re Kent*, 2008 WL 5047799, *1 fn. 2 (Bkrtcy D.Ariz., 2008) (complex history and facts); *In re Jayo*, 2006 WL 2433451, *5 fn. 18 (Bkrtcy D. Idaho, 2006) (issues raised by the litigants needed review).

which itself was up significantly from prior years.[8]  Accordingly, the Court's busy calendar

means that matters that should be considered together cannot always be accommodated and that

matters that need to be decided, may take longer due to the press of conducting hearings and

trials.

In this bankruptcy case, the Court has two matters that would significantly affect the

Court's administration and the Debtor's future, i.e. the sale of the estate's largest asset and

whether cause exists to convert, dismiss or appoint a Trustee.  These matters should be

considered together; however, the Court's busy calendar from the increase in bankruptcy case

and adversary filings, the timing of the filing of the two motions, as well as noticing

requirements prevented them from being scheduled together.  The Motion to Sell is scheduled

for September 9, 2009.  The 15 day deadline for rendering the Section 1112(b) decision is

September 3, 2009.  The short delay needed to hear the Motion to Sell is not consequential when

either matter has the possibility of significantly altering the course of the bankruptcy case.  The

Court is hopeful that its questions and concerns will be adequately addressed at the September 9,

2009 hearing, which would allow it to rule on the Motion at that time or shortly thereafter.

B.      Complexity of the Case and Consequences to the Parties

This case is large and complex, at least for this district.  There are over 124 claims filed

showing approximately $175 million in unsecured claims, $14.5 million in secured claims and

$660,000 in priority claims as set forth above.  There has been argument that there is some

duplication in these numbers and many of the claims may be objectionable; however, at this

---

[8] Chapter 11 bankruptcies filed for the entire year of 2006 and 2007 are 22 and 24 respectively, approximately one-third of chapter 11 cases filed in 2008 and less than one-third of those filed to date in 2009..

time, the claims constitute prima facie evidence of the validity and amount of the claims.[9]  They

still need to be sorted out which will take time and effort.   There have also been numerous

creditors seeking relief from stay and adequate protection.

In addition, there are also complex issues regarding the Debtor's president's

involvement in other entities which requires careful analysis.  Mr. Wolper is president of the

Debtor.  In addition, Mr. Wolper is a manager of the entity, Fox Hollow Saratoga, which owns

the Fox Hollow Property upon which the mechanic's lien is filed.  Fox Hollow Saratoga is

owned entirely by Deer Canyon Saratoga.  Deer Canyon Saratoga is owned by Mr. Wolper and

two other individuals.  The Debtor, through Special Counsel, is suing Fox Hollow Saratoga to

foreclose on the mechanic's lien.  To further complicate the matter, Affinity Bank is also a

defendant in the state court lien foreclosure proceeding.  Additionally, the proposed buyer is a

business operated by one of Deer Canyon Saratoga's co-owners.

Furthermore, the decision to convert or dismiss will have consequences on many people

who are not the debtor, but yet are involved in this bankruptcy.  Seventeen appearances of

counsel were made at the August 19, 2009 initial hearing, which is a large number for this

jurisdiction.  Besides Affinity Bank and the Debtor, nine other entities spoke on the record at the

August 23, 2009 hearing.  All parties appearing, except for Affinity Bank, opposed conversion or

dismissal and most requested delaying ruling until the Motion to Sell was heard.  The number of

creditors and parties who oppose dismissal or conversion is not itself sufficient to defeat the

motion.  However, the volume of parties opposing the Motion must be considered because the

wording of section 1112(b) provides that the Court looks at the "best interest of creditors" and

---

[9] FED. R. BANKR P. 3001(f)

not what is best for a single creditor. Additionally, both the United States Trustee and the

Unsecured Creditor's Committee requested postponing the ruling until after the September 9,

2009 hearing.

The complexity of this case in terms of size of the estate as well as the issues presented

are compelling circumstances to delay ruling until the Court can conduct the Motion to Sell

hearing on September 9, 2009. The consequences to the parties in making the decision to

convert or dismiss will be course changing in terms of administering this bankruptcy case. The

appropriate time to make a decision on whether to convert, dismiss or appoint a Trustee would

be after the Court decides whether the Motion to Sell should be granted. The Court may or may

not rule on the exact date of the Motion to Sell hearing, but the information provided at that

hearing should be considered in deciding this Motion.

## IV.    CONCLUSION

Based on the foregoing, the Court determines there are compelling circumstances that

prevent the court from deciding on the Motion within the 15 days required by Section

1112(b)(3). The ruling is deferred.

_____ooo0ooo_____

### SERVICE LIST

Service of the foregoing **MEMORANDUM DECISION AND ORDER** will be effected to the matrix through the Bankruptcy Noticing Center.

